## SMITHMEYER v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 645. Submitted January 9, 1893. — Decided January 23, 1893.

By sec. 7 of the act of October 2, 1888, 25 Stat. 505, 523, c. 1069, in regard to the building for the Library of Congress, which provided that all contracts for the construction of the building should be made by the Chief of Engineers of the Army, and repealed so much of the act of April 15, 1886, 24 Stat. 12, c. 50, as required the construction of the building according to the plan submitted by John L. Smithmeyer, and enacted that "hereafter, until otherwise ordered by Congress, no work shall be done in the construction of said Library except such as is herein provided for, and all contracts for work or materials not necessary for

the execution of the work contemplated herein are hereby rescinded," it was provided that " all loss or damage occasioned thereby or arising under said contracts, together with the value of the plan for a Library building," so submitted by Smithmeyer, "may be adjusted and determined by the Secretary of the Interior, to be paid out of the sums heretofore or hereby appropriated." Smithmeyer and his partner afterwards brought a suit in the Court of Claims against the United States, to recover $210,000 as the value of plans and drawings made by them for a building for the Library, which were delivered to and accepted by the United States, and used in constructing the building. The Court of Claims *held*, that the acts of the parties indicated that the services of the plaintiffs should be estimated according to the rule of *quantum meruit*, and not according to the schedule of charges of the American Institute of Architects, and that they were entitled to recover $8000 a year for six years' services. *Held*, that that was a proper and reasonable decision.

Although the United States did not appeal, this court considered the question of the jurisdiction of the Court of Claims, and *held*, that, as the right of action of the plaintiffs accrued in 1886, and the Court of Claims from that time had full jurisdiction over it under its general jurisdiction, and as the general jurisdictional act of that court was not repealed by the act of 1888, to the extent of this case, the plaintiffs could waive the benefit of the additional method of adjustment provided by the act of 1888, and the general jurisdiction of that court and such additional method could both of them well stand together.

THIS was an appeal from a judgment in the appellants' favor in the Court of Claims for $48,000 damages, their demand sued for being $210,000. No appeal was taken by the government.

The case is stated in the opinion.

*Mr. John Paul Jones, Mr. Reese H. Voorhees,* and *Mr. James Coleman* for appellants.

*Mr. Solicitor General* and *Mr. Felix Brannigan* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit brought against the United States in the Court of Claims, by John L. Smithmeyer and Paul J. Pelz, architects, to recover the sum of $210,000, as 3 per cent on $7,000,000, the alleged cost of the building for the Library of Congress, when completed.

The petition alleges that the claimants made and prepared the general plans and drawings for the Library building now in process of construction at Washington City; that from the year 1873 to the year 1886, they, at the request of the United States, were employed in making plans and drawings for a building for the Library; that in 1886 such plans and drawings were delivered to the United States and accepted by the latter, which thereafter used and is using the same in the construction of said Library building; that it will cost, when completed, $7,000,000; that the customary charge by architects for the making of general drawings and plans for the construction of said building, and the reasonable value of such service so rendered by them, is 2½ per cent upon the cost of the building; and that there is now due to the claimants 3 per cent on the cost of said building, namely, $210,000.

The usual general traverse was put in by the United States. The Court of Claims heard evidence, and filed findings of fact, and afterwards additional findings of fact, all of which are set forth in the margin,[1] with a conclusion of law that, upon the

---

[1] *Original Findings of Fact.*

1. The claimants, John L. Smithmeyer and Paul J. Pelz, were at the times hereinafter mentioned copartners doing business as architects in the city of Washington.

2. From the year 1873 until the 15th April, 1886, the claimants devoted their time as architects in the making of plans and drawings for a building for the Library of Congress. They acted under the direction and at the request of the commissions and committees of Congress mentioned in the following acts of Congress, viz.: The commission created by the sundry civil appropriation act, March 3, 1873, 17 Stat. 510, 513; the Joint Committee on the Library of Congress, sundry civil act, June 23, 1874, 18 Stat. 204, 226, and the legislative appropriation act, August 15, 1876, 19 Stat. 143, 168; the commission on the enlarged accommodation for the Library of Congress, act April 3, 1878, 20 Stat. 35; the joint select committee on additional accommodation for the Library of Congress, organized under the act June 8, 1880, 21 Stat. 165; deficiency act, March 3, 1881, 21 Stat, 414, 424; and the act April 15, 1886, 24 Stat. 15.

3. Under the act 3d March, 1873, providing for "a plan for a new library building for a Library of Congress," the commission appointed thereunder published and issued the following prospectus or invitation to architects:

Opinion of the Court.

findings, the claimants were entitled to recover $48,000; and it entered a judgment in their favor for that amount, from

---

"WASHINGTON, *August,* 1873.

" To Architects :

"In accordance with the provisions of an act of Congress approved. March 3, 1873, the undersigned hereby invite architectural plans or sketches (not including details or working plans) for a new building for the Library of Congress; to be drawn in accordance with limits and conditions which will be furnished to applicants. The sum of fifteen hundred dollars will be paid for such design as may be adjudged the best by the commission, one thousand dollars for the second best, and five hundred dollars to the third best, to be paid on the 31st of December, 1873.

" The plans must be submitted on or before the 1st day of November next, and addressed (prepaid) to the Librarian of Congress, Washington, D. C.

" Commission :

" Chairman of the Joint Committee on the Library.

" Chairman of the Senate Committee on Public Buildings and Grounds.

" Librarian of Congress."

4. During the ensuing thirteen years, that is to say, between March 3, 1873, and April 15, 1886, the claimants prepared for and submitted to different committees and commissions of Congress the following sets of plans and designs for a Library building, to wit:

(1.) In reply to the foregoing prospectus the claimants submitted a plan for a Library building in the Italian renaissance style of architecture, to said commission. Said building, by the terms of the prospectus, was to be 270 by 340 feet. These plans consisted of one perspective, one front elevation, one side elevation, one first-story plan, one second-story plan, and one section. They were accepted by said commission in December, 1873, and claimants were awarded the first 'prize for excellence of design and were paid therefor a premium of $1500. In that competition there were twenty-eight competitors, and prizes for first, second and third best plans,. respectively, of $1500, $1000 and $500.

(2.) Shortly afterward claimants, at the request of the chairman and members of the Committee on the Library, submitted a new design as a modification of the above-mentioned design, making a change of elevation and some changes of ground plan. This design consisted of a colored perspective, a front elevation, a portion of first-story plan, and a part of the second-story plan, five drawings in all.

(3.) About 1875, at the request of Senator Howe, chairman of the Joint Committee on the Library, claimants prepared a plan for a new Library building in the Gothic style of architecture upon an entirely new basis. This plan was for a building 463 feet 11½ inches by 332 feet 9 inches, and the series of drawings consisted of .seven different sketches, but four of which were submitted to the committee.

which the claimants have appealed to this court. The opinion of the Court of Claims was delivered by Judge Nott, and is

---

(4.) Said Gothic plans were acceptable to the said committee, but at the session of Congress following, at the request of Senator Howe, chairman of said committee, claimants made modifications of the exterior design for said Gothic building, five in number, and these were submitted to his committee.

(5.) About 1877, at the request of Senator Howe, chairman of said committee, claimants prepared plans for a new Library building in the French renaissance style of architecture. These consisted of an elevation framed and colored and a pencil study of the front elevation. In general arrangement it corresponded with the Gothic design, which largely increased the capacity of the building over the premium plan, with the exception that the first and second stories were interchanged. In all designs previous to this one the building consisted of a basement, a very tall first story, and a subordinate second story. At the time these plans were prepared, instead of the Capitol Hill site originally contemplated for the erection of the Library, the committee considered Judiciary Square as a possible site, and, at the request of the committee, claimants prepared two cross-sections of Judiciary Square with the proposed building located, showing grades, sewers, etc. These plans were delivered to the said committee.

(6.) Claimants next prepared, at the request of the Joint Committee on the Library, a design for said building in the Romanesque style of architecture with perspective elevations, that being a cheaper style of architecture, and permitting the use of coarser material than the Gothic. There were three drawings in all in this set of plans, and they were submitted to the said committee.

(7.) About 1879, claimants, at the request of said committee, prepared a design in the German renaissance style of architecture, with finished perspective and eight other drawings, consisting of front, rear and side elevations, and a full set of plans of the different stories, together with a section showing the halls and reading-room, all of which were fully developed. The study of the reading-room was an entirely new and original design, and is the idea carried out in the plans finally adopted by the act of Congress of April 15, 1886, and as set forth in the report of the Chief of Engineers of the Army mentioned in the sundry civil act of March 2, 1889, 25 Stat. 939, 966, as Exhibit D. There were also many changes in this set of plans, to wit, in the ground plans, and showing higher development and greater elaboration of original ideas and progress both in construction and light effect.

(8.) In 1880, claimants prepared full general drawings for a building in the Italian renaissance style of architecture, embodying all the improvements which had been made by the claimants since 1873. In this set of plans there were finished drawings numbering forty. These drawings consisted of a colored perspective, with a full set of ground plans, elevations and

Opinion of the Court.

reported in 25 Ct. Cl. 481, but the additional findings of fact are not there set forth.

---

sections, drawn on a large working-scale one-eighth of an inch to the foot and one-fourth of an inch to the foot, showing the complete arrangements of the building. These plans, with exterior modified as set forth in paragraph (10) below, are the plans adopted by act of Congress of April 15, 1886, aforesaid, and they were readopted by the act of March 2, 1889, above cited. These plans, drawings and designs, though prepared by the claimants' firm, were prepared in consequence of a request made to J. L. Smithmeyer, individually, by the Joint Select Committee on additional Accommodations for the Library of Congress under the act 8th June, 1880, as more fully set forth in finding 12.

(9.) In 1882, at the request of the said committee, claimants redesigned and revised the Gothic plans above referred to in paragraphs (3) and (4) of this finding, making perspectives and front elevations. These revised plans were also turned over to the committee, and were adopted by the Senate in a bill passed by that body authorizing the construction of a Congressional Library, but which failed in the House.

(10.) The set of Italian renaissance plans, prepared in 1880 by the claimants, under instructions of the committee as aforesaid, was very severe and simple, and at the request of the said committee in 1885 or 1886 two new designs were prepared by the claimants in the same style of architecture and submitted to them. These exterior plans were more ornate than those submitted in 1880. They made no changes in the interior of the building, but were intended to affect only the exterior, and consisted of perspectives. These perspectives were made for the color effect of using different shades of material in the elevation. They are on a large scale, and carefully considered with reference to the architectural effect of the building.

5. Claimants, in the year 1874, gave up their private business as architects, and from that time on until 1886 devoted themselves almost exclusively to the preparation of the plans above described, and up to the time of the commencement of this suit they had not regained their private business.

In 1882 one of the firm, Mr. Smithmeyer, travelled throughout this country and in Europe, visiting different library buildings in New York, Philadelphia, Boston, Baltimore, Liverpool, London, Paris, Brussels, Vienna, Berlin, Dresden, Leipsic and Hanover, at the request of the said joint select committee, for the purpose of obtaining information in respect to the architecture of the great library buildings of the world.

6. When Congress, by the act 15th of April, 1886, adopted the plans prepared by the claimants in the Italian renaissance style of architecture, as set forth in the preceding findings, the commission therein created was organized, and the work of constructing the Library building under and in accordance with the said plans so furnished by claimants and so adopted by Congress was commenced in the month of October, 1886.

Under the direction of the commission the foundation was laid for the

The claimants complain that, instead of being allowed $210,000, they were allowed only $48,000. The United States

rotunda and centre building, and for the curtains and corner pavilions of the west front, after the plan so adopted by Congress, while the cellar excavation and drainage system for the entire building has been completed. Some 29,000 cubic feet of cut granite for the cellar walls and piers, and also small quantities of terra-cotta pipe for flue linings and broken stone for concrete, had been delivered on the premises. Only about 23,000 cubic feet of the granite, however, had been accepted and paid for. A partial outfit of derricks, tools, implements and other mechanical appliances had been collected, mainly by transfer from the completed building for the State, War and Navy Departments, and a number of contracts were in force.

7. (1.) In accordance with the provisions of the sundry civil act, October 2, 1888, 25 Stat. 505, 523, General Casey, Chief of Engineers, on October 3, 1888, assumed the superintendence of the new Library building.

In order to meet the requirements of said act, limiting the cost of said building to $4,000,000, General Casey so far changed the plans adopted by the act of April 15, 1886, as to reduce the cost within this prescribed limit, by cutting out the curtains connecting the wings with the central pavilion, and abutting the wings immediately thereupon, thus eliminating the courts formed by said curtains and the storage magazines contained therein, in this way decreasing the size of the proposed building and the amount of material required in its construction.

The plans so submitted are the plans marked A in the report of the Chief of Engineers and are the identical plans submitted by John L. Smithmeyer and adopted by Congress by the act of April 15, 1886, with certain parts omitted as aforesaid.

(2.) Plans D, mentioned in said act of March 2, 1889, are the identical plans which Congress had formerly adopted by the above-mentioned act of April 15, 1886, with certain interior parts of the building for book magazines omitted, which omitted parts are shown in the drawings appended to the said report of the Chief of Engineers.

8. At the time when the act 15th April, 1886, 24 Stat. 12, authorized the construction of a Library building " substantially according to the plans submitted to the Joint Select Committee on Additional Accommodations for the Library of Congress by John L. Smithmeyer, in the Italian renaissance style of architecture, with such modifications as may be found necessary or advantageous without materially increasing the cost of the building," no specifications fixing or designating the material of the building had been adopted, and until such specifications were adopted, or the kind of material was in some way determined, it was impossible to fix, except approximately, the amount of the estimated or anticipated cost of the building to be constructed.

The first estimate of the cost of the building authorized by the act April 15, 1886, made by any officer or agent of the government was made by the

has not appealed, but says that if the question of jurisdiction raised in the Court of Claims and appearing on the face of the

---

Chief of Engineers of the Army in his report to the Speaker of the House of Representatives, bearing date December 1, 1888 — that is to say, after the duty of constructing the building had been devolved upon him by the act 2d October, 1888, (25 Stat. 505, 523.) In his report he submitted to Congress an "estimate of cost of the original plan modified," which "estimate" amounted to $6,003,140.

This original plan "modified" was the plan of the claimants adopted by the act April 15, 1886, and the modification consisted in omitting about one-sixth of the finished interior, though retaining the external walls of the building as originally designed by the claimants. The portion so omitted would cost, if built according to the original plan, about $1,000,000 in addition to the estimate of $6,003,140 made by the Chief of Engineers for the modified plan. This modified plan, to cost $6,003,140 was designated in the report to Congress as plan D, and is the same plan adopted and authorized by the act 2d March, 1889, 25 Stat. 939, 966.

But in 1884, while the claimants' plans were still under consideration in Congress, the claimant Smithmeyer had prepared a paper entitled "Description of the plans for a new building for the Congressional Library," which was "ordered to be printed for the information of the members of the House, April 3, 1884." The plans referred to in this document were the same plans then before Congress, subsequently designated as the plan of John L. Smithmeyer in the act of 1886, after which the building is now being constructed, and it was an accurate description of the said plan as then existing. It concluded with the following paragraph:

"The approximate estimate of the cost of completing this structure, made from the drawings on hand this date — i.e., the plan adopted by the committee — in the Italian renaissance style of architecture, in stone and iron, will be $3,262,600, and the cost of completing such portions of the inside for occupation as will accommodate one million of books will be $2,323,600."

9. The usual and customary schedule of charges and the professional practice of architects, as prescribed by the American Institute of Architects, (chartered under the laws of the State of New York, and of which both claimants are members,) the Western Association of Architects, and other architectural societies, including the District of Columbia, and by the profession generally, fixes the rates of compensation and rules governing the same as follows:

"For full professional services, (including supervision,) 5 per centum upon the cost of the work.

"The charge for partial service is as follows:

|  | Per cent. |
| --- | --- |
| "Preliminary studies | 1 |
| "Preliminary studies, general drawings, and specifications | 2½ |
| "Preliminary studies, general drawings, specifications and details | 3½ |

record, and hereinafter considered, is decided adversely to the United States, it is content that the judgment should be affirmed.

---

"For works that cost less than $10,000, or for monumental and decorative work and designs for furniture, a special rate in excess of the above.

"An additional charge to be made for alterations or additions in contracts or plans, which will be valued in proportion to the additional time and services employed.

"Necessary travelling expenses to be paid by the client.

"The architect's payments are successively due as his work is completed in the order of the above classifications.

"Until an actual estimate is received, the charges are based upon the proposed cost of the works, and the payments are received as instalments of the entire fee, which is based upon the actual cost."

These are the rates and rules established by the custom and usage of the profession, and are never deviated from by architects in good standing, except under exceptional circumstances, and then only by a special and express contract.

The plans under which the building for the Library of Congress is being constructed are designed and intended for a monumental building, within the meaning of the paragraph of the foregoing schedule which prescribes additional rates for such plans.

In a number of cases the executive branch of the government has employed architects at the rates prescribed by the foregoing schedule of the American Institute.

10. The plans prepared and submitted by the claimants, and accepted and so used by the government in the construction of the building, consisted of "preliminary sketches and general drawings," within the meaning of the classification in the schedule of the American Institute of Architects, and were so complete and perfect that any competent architect could take them and construct the contemplated building from them, without the assistance or advice of the claimants.

For such preliminary studies and general drawings the rate of remuneration prescribed in the schedule set forth in the preceding finding is, with specifications added, $2\frac{1}{2}$ per cent upon the cost or proposed cost of the work, but, inasmuch as the kind of material and the style of finish for the Library building had never been fixed upon by Congress or by any officer or agent of the government, no specifications were ever prepared by the claimants.

They consequently were unable to furnish the specifications, and were relieved from the duty and labor of preparing them. The court finds $3300 to be the reasonable value of the service of preparing specifications for this building from which the claimants were so relieved — that is to say, if the claimants are entitled to recover a commission of $2\frac{1}{2}$ per cent on the cost or proposed cost of the building, the sum of $3300 represents the

The question of the jurisdiction of the Court of Claims in this case arises on certain provisions of the act of October 2,

---

amount which may be deducted for specifications, which they were ready and willing to furnish, but which they did not, in fact, furnish to the defendants.

11. On the 1st October, 1886, the commission created by the act of 15th April, 1886, appointed the claimant John L. Smithmeyer architect of the Library building and fixed his compensation at $5000 per annum. On the 13th November, 1886, the commission also appointed the claimant Paul J. Pelz principal draughtsman and fixed his compensation at $3000 per annum. The appointments were in writing. Mr. Smithmeyer continued in the service of the defendants as architect of the Library building until October 3, 1888, when he was removed by the Chief of Engineers. Mr. Pelz is still employed. The claimants at the time of accepting such appointments did not notify either Congress or the commission that they intended to charge according to the schedule of the Institute for the plans furnished, nor did they so notify Congress or the commission before the work began on the building under the act of 1886, but had previously notified the chairman of the joint select committee that they intended to charge for the plans.

During the preceding twelve years — that is, say, from October, 1874, to April 15, 1886 — the claimants had given substantially their whole time to the service of the committees and commissions having charge of the subject of a Library building, as is more particularly set forth in finding 4, and had also furnished the necessary draughtsmen and clerks and office room. It has been shown that the cost of draughtsmen, clerks and office rent is usually about 50 per cent of the gross receipts of an architect's business, and that the cost of plans and specifications in the office of the supervising architect of the Treasury is about $2\frac{1}{2}$ per cent of the cost of the building; but it has not been shown what were the expenditures of the claimants during the twelve years above mentioned further than that their office rent was $600 per annum, and that they ordinarily employed a number of clerks and draughtsmen whose compensation respectively ranged from $2 a day to $10 a day.

12. Immediately after the enactment of the act of 8th June, 1880, the joint select committee therein named selected Edward Clark, Alexander R. Esty, and the claimant John L. Smithmeyer as the three suitable persons contemplated by that act to determine whether it was practicable and beneficial to provide additional library space in the Capitol or preferable to erect a separate building. The claimant's appointment was in the following words:

> "*Rooms of the Joint Select Committee on Additional*
> *Accommodations for the Library of Congress,*
> *Washington, D. C., June 17, 1880.*

"John L. Smithmeyer, Esq., *Washington, D. C.*

" Sir: The joint select committee contemplated by the act of Congress approved June 8, 1880, (a copy of which you will find inclosed,) being duly

1888, 25 Stat. 505, 523, c. 1069, entitled "An act making appropriations for sundry civil expenses of the government

---

organized, have directed me to notify you that you have been selected as one of the ' three persons of suitable skill and attainments' provided for in said act, to consider the questions therein named.

" In making this communication to you the committee desire to call your attention to the provisions of the first section, relating to the examination of the Capitol building. This examination will be made in connection with your associates, Mr. Edward Clark, architect of the Capitol, and Mr. Alexander R. Esty, of Boston.

" It is not deemed necessary further to point out your duty in connection with the first section of said act, except to call your attention to the last sentence of the same. You will observe that provision is there made for a comparative examination and estimate of the advantages between library accommodations connected with the Capitol and the erection of a separate building for that purpose.

" The object of the act is to empower ' three persons of suitable skill and attainments' on the subject of architecture to determine whether it is ' practicable and beneficial' to provide additional accommodations for the Library in connection with the Capitol building or whether it is preferable to go elsewhere and erect a separate building. If you and your associates find adversely to the idea of building on the present Capitol, then the committee desire you and each of you to submit plans, specifications and estimates for a building at some eligible point in the city disconnected from the Capitol. In doing this the committee would advise that what is known as Judiciary Square, and also the ground east of the present Capitol ground, be taken into consideration; but in designating these points the committee do not intend to be understood as excluding from your consideration other eligible sites that may occur to you.

" If a new building should be decided on, it is the judgment of the committee that it should be not less than four hundred and fifty (450) feet in length and three hundred (300) feet in width; that it should be constructed of material as durable as the two wings of the Capitol; and that the interior should be brick, iron or other material as nearly fire-proof as possible. As to the interior arrangement and the practicability of its future extension and improvement, it is the desire of the committee that you consult with the Librarian of Congress.

" It is proper in this connection to call your attention especially to that part of section 1 which looks to the improvement of the 'legislative halls,' ' the convenience of communication between them,' ' their better ventilation, light and exposure to the open air.' That subject you will consider in connection, however, with the primary purpose of this legislation, which is to provide a structure for the better accommodation of the Library of Congress and for its future wants.

" The committee earnestly hope that you and your associates will be

for the fiscal year ending June thirtieth, eighteen hundred and eighty-nine, and for other purposes," referred to in finding 7, which read as follows:

---

able to meet at an early day and proceed with the duties pointed out in this act. They hope to receive a preliminary report from you, if possible, as early as the 1st of October next, and it is their expectation that they will have such reports from you as will enable them to report to Congress upon its meeting in December next.

" The committee have designated Mr. Edward Clark, Architect of the Capitol, to act as chairman of the board when in consultation.

" Very respectfully, yours, etc.,      D. W. VOORHEES,
" *Chairman.*"

After receiving such appointment the claimant Smithmeyer entered upon and performed the duties therein indicated, both with regard to the adaptation of the Capitol to the purposes of a library and with regard to a separate building. In the discharge of these duties he produced, at the request of the joint select committee in 1880, a plan or plans for the alteration and enlargement of the Capitol and a plan for a building to be erected on Judiciary Square, and likewise the plan or plans described in finding 4, subdivision 8, for a separate building. The latter plan or plans had inscribed upon them the name of Smithmeyer & Pelz, the claimants' firm-name, and were prepared by the firm and at its cost, but were delivered to the committee by the claimant Smithmeyer, and the plan so delivered was the same adopted by and referred to in the act 15th April, 1886, as "the plan submitted to the Joint Select Committee on Additional Accommodations for the Library of Congress by John L. Smithmeyer." It was reported to Congress by the committee on the 14th January, 1881, restudied and greatly improved by the claimants, and was afterward modified at the request of the committee, as set forth in paragraph (10) of finding 4.

No express contract or agreement was entered into by the committee and the claimant Smithmeyer, determining his compensation for his services generally or for preparing these specific plans; neither was any contract whatever entered into between the committee and the firm of Smithmeyer & Pelz.

13. The following statement sets forth all the payments made by the defendants to the claimants in and about the matter of preparing plans for a building for a Congressional Library, including a plan for the extension of the Capitol. With the exception of the first item of $1500, all the payments were made to Smithmeyer alone for his individual services under the provisions of the act of June 8, 1880.

"For the building for the Library of Congress, as herein provided for, and for each and every purpose connected there-

---

*Statement of Payments.*

From the $5000 appropriation of March 3, 1873, "for a plan for a new building for a Library of Congress." (17 Stat. 513:)

On December 29, 1873, "for one set of designs for a new building for the Library of Congress, the amount of the first premium"........................................................ $1500 00

From the appropriation of $8000 made by the act of June 8, 1880, 21 Stat. 165, and the act of March 3, 1881, (Ib. 424,) to be expended by the joint select committee, created by said act of June 8, 1880, for the purpose therein mentioned:

On August 10, 1880, "for services rendered the joint select committee to provide additional accommodations for the Library of Congress"........................................... 600 00

On October 23, 1880, "for services rendered and drawings submitted" for said committee............................... 500 00

On —— ——, ——, "for draughts of plans, etc., for library building"................................................... 802 00

On February 26, 1881, "for ground plans, elevations and perspective drawings of the Capitol building as illustrating the preliminary report on the subject of extending it"..... 650 00

On March 30, 1881, for "professional services rendered"...... 650 00

On November 2, 1881, for "labor on plans, sections, etc.".... 500 00

On February 28, 1882, for "services rendered"............... 400 00

On June 29, 1882, for "professional services rendered — *i.e.*, estimates, drawings, etc., etc.".............................. $500 00

On August 23, 1882, for "professional services up to date".... 800 00

On January 20, 1883, for "services rendered as professional expert"...................................................... 955 00

On January 4, 1883, for "drawings, photographs, copies of plans and books purchased from C. Pulman, Esq., custodian of British Museum"............................................. 40 88

                                                            ————
        Total as above.................................... $7897 88

14. The claimants have not submitted any demand to the Secretary of the Interior, under the provisions of the act of October 2, 1888, above cited, for adjustment and determination; nor have they, or either of them, made any claim to the executive department in regard to any matter alleged in their petition looking to the payment of the fees or compensation demanded in this suit.

15. Since October, 1886, the Library building has been and still is in process of construction according to the plan designated by the act 15th

with, including the cost of all professional and other personal services that the Chief of Engineers of the Army may deem

of April, 1886, modified by the act 2d March, 1889, as is more fully set forth in the preceding findings.

16. The court finds the fair and reasonable value of the claimants' services in preparing the plans delivered to the joint select committee and reported to Congress on the 14th of January, 1881, and which are now being used by the government in the construction of a Library building, to be ($48,000) forty-eight thousand dollars.

*Additional Findings of Fact.*

1. From the passage of the act of 15th April, 1886, until October 1, 1886, neither of the claimants were in any way in the employ of the defendants.

At this time the claimant Smithmeyer was employed. The following letter shows the extent of his employment:

"WASHINGTON, D. C. *April* 19, 1887.
" JOHN L. SMITHMEYER, Esq.

"DEAR SIR: At a meeting of the commission held on Friday, October 1, 1886, you were appointed architect of the building for the accommodation of [the Library of?] Congress, at a compensation of $5000 per annum.

"Respectfully, L. Q. C. LAMAR.
" *Sect. of the Interior and Chairman Cong. Library Commission.*"

Subsequently, and on the 13th day of November, 1886, the commission employed the claimant Pelz as principal draughtsman of the building, and agreed to pay him $3000 per annum.

The claimants were not employed as a firm, and neither had any interest in the employment of the other, or in the services to be rendered by the other, or in the compensation to be paid for such services. Their employment related solely to service to be rendered by them in the future construction of the building, and no other.

2. Subsequently to the act of April 15, 1886, the defendants paid for the services of draughtsmen, computers, modellers and experts of every kind, and also all expense for stationery, instruments, clerk-hire, office rent, fuel, gas and all other necessary expense which might be connected with an architect's office, and none of such service or expense was paid by claimants or either of them. From April, 1886, to the 30th of April, 1888, the commissioners paid for such expense the sum of $33,803.29.

3. The acceptance of the salaries by Smithmeyer and by Pelz were the only acts, as far as appears, done by them or either of them, or agreements, express or implied, between them and the defendants or the commissioners, relative to their compensation as architects either for preparing the plans or superintending the work.

4. In determining the value of claimants' services in preparing the plans accepted by the defendants, and adopted by them, and used by them in the

necessary for the work and shall specially order, five hundred thousand dollars.

"This appropriation and all appropriations hereafter made, and all sums available from appropriations heretofore made for this purpose, shall be expended under the direction and supervision of the Chief of Engineers of the Army, who shall have the control and management of all said work and the employment of all persons connected therewith. And all contracts for the construction of said building, or any part thereof, shall be made by the Chief of Engineers of the Army, and so much of the act entitled 'An act authorizing the construction of a building for the accommodation of the Congressional Library,' approved April fifteenth, eighteen hundred and eighty-six, as requires the construction of said building substantially according to the plan submitted to the Joint Select Committee on Additional Accommodations for the Library of Congress, by John L. Smithmeyer, and so much of the first section as provides for a commission, together with the eighth section of said act, be, and the same are hereby, repealed, and the duties of said commission under said act are hereby devolved upon the Chief of Engineers of the Army, who shall annually report to Congress at the commencement of each session a detailed statement of all the proceedings under the provisions of this act, and hereafter, until otherwise ordered by Congress, no work shall be done in the construction of said Library except such as is herein provided for, and all contracts for work or materials not necessary for the execution of the work contemplated herein are hereby rescinded. And all loss or damage occasioned thereby or arising under said contracts, together with the value of the plan for a Library Building

---

construction of the Library building, no allowance has been made for service rendered after the 14th day of January, 1881, in restudying and improving such plans or in preparing the new designs for the exterior of said building as set forth in paragraph (10) of finding 4, and in the last paragraph of finding 12.

5. In fixing $48,000 as the fair and reasonable value of claimants' services in preparing said plans, accepted and adopted by the defendant, no allowance has been made for the expenses of the architect's office.

submitted to the Joint Select Committee on Additional Accommodations for the Library of Congress by John L. Smithmeyer, in the Italian Renaissance style of Architecture, may be adjusted and determined by the Secretary of the Interior, to be paid out of the sums heretofore or hereby appropriated: *Provided*, That before any further contracts are let for the construction of said building general plans for the entire construction thereof shall be prepared by or under the direction of the Chief of Engineers of the Army, which plans shall be subject to the inspection and approval of the Secretary of War and the Secretary of the Interior: *And provided further*, That the total cost of said building shall not exceed four million dollars exclusive of appropriations heretofore made."

The particular provision referred to, is that "all loss or damage occasioned thereby, or arising under said contracts, together with the value of the plan for a Library Building submitted to the Joint Select Committee on Additional Accommodations for the Library of Congress by John L. Smithmeyer, in the Italian Renaissance style of Architecture may be adjusted and determined by the Secretary of the Interior, to be paid out of the sums heretofore or hereby appropriated."

It is contended for the United States that the word "may" in such provision means "shall;" that the Secretary of the Interior was thus constituted a special tribunal to adjust and determine the equitable right of Mr. Smithmeyer for the value of his plan, that the Secretary of the Interior never had an opportunity to make payment for the plan, as, according to finding 14, the claimants did not submit any demand to him for an adjustment and determination under the act of October 2, 1888; and that neither the Court of Claims nor this court has any jurisdiction in the premises. It is contended that the act referred the claim to the Secretary of the Interior as a special tribunal, with exclusive power, not only to make an award, but also to pay its amount.

But this right of action accrued in 1886, and the Court of Claims from that time had full jurisdiction over it, under its general jurisdiction. The act of October 2, 1888, did not re-

peal, either expressly or by implication, the general jurisdictional act of the Court of Claims, to the 'extent of this case. The purport of the act of 1888 seems to have been to provide a method of adjusting the claim, if the claimants so desired, without a suit. The claimants had a right to the additional method, but they could also waive its benefit. The general jurisdiction of the Court of Claims and the additional method of adjustment can both of them well stand together. *De Groot* v. *United States*, 5 Wall. 419, 432; *Gordon* v. *United States*, 7 Wall. 188; *Henderson's Tobacco*, 11 Wall. 652; *Shutte* v. *Thompson*, 15 Wall. 151; *Bechtel* v. *United States*, 101 U. S. 597; *Campbell* v. *United States*, 107 U. S. 407; *Chew Heong* v. *United States*, 112 U. S. 536; *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645; *United States* v. *Harmon*, ante, 268.

The contention on the part of the claimants is that the value of their plans or services ought not to be estimated according to the rule of *quantum meruit*, but that they ought to be paid according to the rates established by the general usage of the architects' profession throughout the United States. On the evidence the Court of Claims, by finding 16, found the fair and reasonable value of the services of the claimants, in preparing the plans delivered to the Joint Select Committee, reported to Congress on January 14, 1881, and which are now used by the government in the construction of the Library building, to be $48,000. This was a finding on the evidence; the evidence is not before us; and without it, we are asked, on findings of facts as to work done in connection with plans which were not adopted, to reverse the judgment of the Court of Claims as to the reasonable value of the plans which were adopted, and for which alone the right to compensation exists.

It appears from the findings of the Court of Claims that no contract, express or implied, was entered into with the claimants, or either of them, by any commission, committee or public officer, empowered to adopt plans or employ architects, or to enter upon the construction of the building, until the act of April 15, 1886, c. 50, 24 Stat. 12, referred to in finding 8, was passed, which adopted the plan of F. ithmeyer. That act did not constitute a contract, but only clared the intention

of the legislature. It might have been rescinded at any subsequent time before the claimants changed their position and entered upon the performance of the proposed work, without either party becoming liable to the other. *Tilley* v. *County of Cook,* 103 U. S. 155, 160, 161. From 1873 to 1886, the services of the claimants were of an advisory nature, for compensation, and were such services as are mentioned in the statement of payments in finding 13 as "professional services."

As found in finding 11, the commission created by the act of April 15, 1886, 24 Stat. 12, c. 50, appointed Smithmeyer, on October 1, 1886, to be architect of the Library building, at a compensation of $5000 per annum; and on November 13, 1886, it also appointed the claimant Pelz to be principal draughtsman, at a compensation of $3000 per annum, both appointments being in writing. Mr. Smithmeyer continued in the service of the United States, as architect of the building, until October 3, 1888, a period of over two years. It is further found in finding 11, that the claimants, at the time of accepting those appointments, did not notify Congress or the commission that they intended to charge, according to the schedule of the American Institute of Architects, for the plans furnished, nor did they so notify Congress or the commission before the work began on the building under the act of April 15, 1886, although they had previously notified the chairman of the Joint Select Committee that they intended to charge for the plans.

The acceptance by the claimants of employment at an agreed compensation per annum, before either party had acted on the faith of a different understanding, leaves no room for implying any other contract or usage. There was an express contract by which the claimants, as architects, were under the duty of furnishing plans at the agreed compensation.

In the opinion given by the Court of Claims, it is stated that the court was of opinion that the acts of the parties indicated that the services of the claimants should be estimated according to the rule of *quantum meruit,* and not according to the schedule of charges of the American Institute of Architects; that, instead of a percentage, the United

States elected to give, and the claimants consented to take, two annual salaries amounting to $8000 a year, as an equivalent for such percentage; that, as the claimants thus departed from the general rule of architects, of measuring their compensation by the customary fees of their profession, and did so without any express agreement or reservation as to the preceding part of their service, the court was of the opinion that such part should be estimated according to the same rule, which the parties had themselves adopted; and that, taking those facts of mutual acquiescence as elements for computing damages, bearing in mind that a period of about six years existed between October, 1874, when the claimants began to give their entire time to what may be termed the evolution of their plans, and January 14, 1881, when the plans were submitted to Congress, and remembering also that one of the claimants had received from the government, for other professional services connected with the Library, the sum of $4600, the court found as the value of perfecting the design and preparing the plans a like equivalent of six years' service at $8000 a year, and fixed the damages at $48.000. This we consider a proper and reasonable decision.

*Judgment affirmed.*