No. 31,572

THE WICHITA TRANSPORTATION COMPANY, *Appellee*, v. THE PEOPLES TAXICAB COMPANY, *Appellant*.

(34 P. 2d 550.)

Opinion filed July 7, 1934.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue*, all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris*, all of Wichita, for the appellee.

*George W. Cox, Lawrence Weigand* and *L. E. Curfman*, all of Wichita, as *amici curiæ*.

The opinion of the court was delivered by

SMITH, J.: This is an action to enjoin the defendant from operating taxicabs in the city of Wichita without complying with the provisions of certain ordinances of the city. Judgment was for plaintiff. Defendant appeals.

The plaintiff is the regular street-car company of the city. The petition was filed and the present action begun on July 24, 1933. In brief the petition recites the franchise of the plaintiff to operate street cars and buses, the value of its property, the unwarranted and illegal interference by the defendant with its business and intending passengers, the violations of the ordinances above referred to, and the prayer is for an injunction to restrain the defendant from operating in violation of the city ordinances and from causing loss and damage to the plaintiff. The ordinances in question are 11-252, 11-254 and 11-158. The two former ordinances are held to be valid in the case of *Peoples Taxicab Co. v. City of Wichita,* post, p. 129, 34 P. 2d 545, this day decided. Number 11-254 prohibits taxicabs from soliciting or receiving passengers on certain streets where buses and street cars are operated. When the application for a temporary injunction was heard the defendant was enjoined from—

"(a) Soliciting or receiving passengers on streets where the buses and street cars were operated, except that passengers might be received where prior arrangements had been made, and

"(b) 'Cruising' as defined by ordinance 11-180."

When the case came on to be heard upon its merits a permanent injunction was granted enjoining the defendant from—

"(a) Operating taxicabs without a license, or

"(b) Without bond or insurance;

"(c) Soliciting passengers on streets where buses or street cars were operated; or

"(d) Receiving passengers on such streets except where prior arrangement was made therefor; and

"(e) From 'cruising.'"

The first contention of defendant is that on account of the pendency of the case of *Peoples Taxicab. Co. v. City of Wichita,* in which case the enforcement of the ordinance in question was temporarily enjoined, the plaintiff had no right to maintain this action. As to this argument that case has been consolidated with this case for consideration in this court and will be considered on its merits.

Defendant next contends that if the ordinances should be held valid then plaintiff has an adequate remedy at law, because, had the taxicab company violated the provisions of the ordinances, it would have been subject to arrest and punishment. The rule is that where property rights are involved and the injured party does not stand in the same relationship to the enforcement of the ordinance as the general public, the mere fact that the injunction has the effect of enforcing penal provisions is no objection to the use of equity.

In this case the petition alleged operation of plaintiff company, its investment and heavy expense of operation and—

"That the defendant company, together with other and separate companies and individuals who are made parties to separate suits filed in this court at the time of the filing of this petition, have recently become engaged in operating what is commonly known as '10¢ taxicabs' in competition with the transportation system of the plaintiff and depriving it of the business which it has builded over a period of years, destroying the earning capacity of the plaintiff, the value of its property and good will, and impairing the ability of the company to pay taxes, wages and employees and other operating expenses. That as a result thereof, the plaintiff has been and is required to operate its buses and street cars at a loss, which losses, due to the illegal and unlawful acts of the defendant, as hereinafter set forth, have been increased to the point where the plaintiff is in imminent danger of insolvency or bankruptcy which is liable to cause the total destruction of the property and property rights of the plaintiff and the abandonment of its system of transportation."

And—

"That the failure and refusal of the defendant to comply with the terms and provisions of the ordinances as set forth in the preceding two paragraphs enables the defendant to unfairly compete with the plaintiff herein, which is compelled to pay and has paid taxes, license fees and carrier's fees for the operation of its vehicles, and, whereas the defendant has been, and is operating taxicabs without paying any license or occupation fee therefor or making any payment for a bond or insurance coverage on its taxicabs."

Defendant met this with a general denial and the following allegation:

"Defendant denies that it is in direct competition with the plaintiff herein, and alleges that it renders a different service than is rendered by the plaintiff; that it charges a higher rate than is charged by the plaintiff for the transportation of passengers; that it is able to transport passengers to and from portions of the city of Wichita to which point or points the said plaintiff's transportation facilities do not go; that the transportation facilities of plaintiff are wholly inadequate to meet the conditions and needs of the citizens of Wichita, Kan., and that said plaintiff is unable to render adequate transportation facilities. That the said plaintiff does not render any service from midnight to six o'clock a. m. of each day and that said defendant has day and night service."

With the pleadings thus framed the judgment in favor of plaintiff carried with it a finding of fact that would support the judgment. Since that is the case the rule announced in the case of *Featherstone v. Independent Service Station Ass'n* (Tex.), 10 S. W. 2d 124, is helpful. There the court said:

"When and under what circumstances will a court of equity exercise authority to prevent the commission of crimes? The general rule is that, except as conferred by statute, courts of equity have no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute violations of penal statutes. Notwithstanding this is the general rule, it is also well settled that, when necessary to protect civil or property rights, equity will interfere, and the fact that the commission of a statutory offense must be enjoined, as an incident to the giving of proper relief, will not deprive the court of its jurisdiction in this respect . . . This doctrine was approved by the supreme court of the United States in *In re Debs,* 158 U. S. 593, 39 L. Ed. 1106." (p. 127.)

That was a case where the plaintiff had alleged that a lottery scheme employed by a competitor was attracting trade and business from plaintiff to his injury.

In the case of *New York, N. H. & H. R. Co. v. Deister*, 253 Mass. 178, the plaintiff railway company, operating between Boston and Brockton under a franchise, brought action to enjoin the operation of buses between those points, the bus companies having no license to operate. It was proved in that case that the competition of the bus companies caused a substantial loss of passenger revenue to the plaintiff. It was there held:

"The agreed facts disclose irreparable injury to the plaintiff in the loss of revenue derived from patronage diverted by the defendant through his illegal conduct in operating buses without the license required by law. The plaintiff may maintain its suit for an injunction. It has a franchise right to transport passengers between the points named. That right carries with it heavy obligations to the public. Although that franchise right is not exclusive against other grants authorized by the legislature, it is exclusive against one conducting competition, as is the defendant, without a franchise or license and contrary to law. . . . The operation by the defendant of the buses on the highway contrary to the precise prohibition of G. L., c. 159, sec. 45, renders the vehicles outlaws and constitutes a nuisance. . . .

"The remedy afforded by G. L., c. 159, sec. 40, enabling the department of public utilities through the attorney-general to invoke relief by mandamus or injunction, is for the benefit of the public. It does not prevent private remedy where the nature of the wrong is such as to warrant that course." (pp. 181, 182.)

See, also, *Boston & Maine Railroad v. Cate*, 254 Mass. 248. There the court said:

"The plaintiff, being a common carrier of passengers under franchises from the commonwealth and suffering substantial financial injury from the unlawful competition of the defendant, has a right to maintain a suit in equity to restrain that conduct of the defendant in violation of the statute. This is the necessary result and a precise point of the decision in *New York, New Haven & Hartford Railroad v. Deister,* 253 Mass. 178. The case at bar is completely covered by that authority on this point." (p. 252.)

To the same effect is *Long's Bag. Trans. Co. v. Burford,* 144 Va. 339. See, also, *United Traction Co. v. Smith,* 187 N. Y. Supp. 377; *Adam v. New York Trust Co.,* 37 F. 2d 827; *Denver Tramway Corporation v. People's Cab Co.,* 1 F. Supp. 449. Some language used in the above opinion is helpful. It is as follows:

"The court cannot protect complainant from lawful competition, nor can the latter complain of new methods of transportation that have a greater appeal to the traveling public. The extent to which taxicabs and street cars come into direct competition is difficult to determine. Street cars and buses run upon fixed routes, while taxicabs are designed for individual transportation, their charges customarily being measured by the distance traveled, as was usual with the old horse-drawn vehicles that they have succeeded. Primarily each occupies a separate field and appeals to a different class of patrons. The aggregate of the transportation services required and usual in a modern city includes both. To the extent that they complement each other, neither can complain in law of loss of business due to resulting competition. Nor is this changed by the fact that the taxicab company offers to do business on a rate schedule below actual cost of the service. . . . My present view is that the complainant may not complain of taxicab competition, defining the same as that of 'a motor-driven conveyance that performs a service similar to the cab or hackney carriage, held for hire at designated places at a fare proportioned to the length of the trips of the several passengers, who are taken to be carried to destinations without regard to any route adopted, or uniformly conformed to by the operator,' but is entitled to protection against the operations of the defendant, in so far as its cabs regularly traverse the public streets between certain definite points or termini, seek patronage along the routes of complainant's cars, or engage in systematic cruising, so called. Such an order will protect the Tramway company from all special damages resulting from direct competition." (pp. 451, 452.)

Defendant cites and relies on *Telephone Co. v. Telephone Association,* 94 Kan. 159, 146 Pac. 324. In that case the company that sought the injunction was a telephone company which had a certificate of convenience and necessity to operate. The association was operating in the same territory without such a certificate. The telephone company alleged that it was serving the public adequately and that if the new company were permitted to operate, ruinous competition would result. This court held that the telephone com-

pany did not have sufficient special interest in the matter that was not shared in by the public to entitle it to maintain the action. The case is not in point here.

Under the issues made by the pleadings and found in effect by the judgment of the court we have a case presented here where the plaintiff is in danger of suffering real loss of business, which, if allowed to continue, will lead it eventually into bankruptcy. A discontinuance of the service furnished by a responsible transportation company which might result from this would be detrimental to the best interests of the inhabitants of the city, as well as ruinous to the company. In the Telephone company case the court said:

"A private plaintiff who is likely to be injured in some special manner, or whose situation is peculiarly affected by the exercise of usurped power, could maintain the action, but no such case is presented here." (p. 163.)

We hold that this case comes under that exception rather than under the general rule announced in the opinion. The city has grasped the gravity of this situation and has acted to prevent it by the enactment of the ordinances in question. Under such circumstances we hold that the plaintiff had a right to bring this action in equity rather than suffer further losses and damage while waiting for the ordinances to be enforced by means of prosecutions for its violation.

The other questions raised in the brief of defendant are settled in favor of the contentions of plaintiff by the conclusion reached in the case of *Peoples Taxicab Co. v. City of Wichita,* supra.

The judgment of the trial court is therefore affirmed.