## CAPITAL TRANSIT CO. v. SAFE-WAY TRAILS, Inc.

### No. 11326.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 15, 1952.

Decided Jan. 15, 1953.

Mr. W. V. T. Justis, Washington, D. C., with whom Messrs. F. G. Awalt, Edmund L. Jones and Daryal A. Myse, Washington, D. C., were on the brief, for appellant.

Mr. Francis J. Ortman, Washington, D. C., with whom Messrs. William A. Roberts and Charles B. McInnis, Washington, D. C., were on the brief, for appellee.

Before CLARK, PROCTOR and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The District Court on motion dismissed a complaint filed by Capital Transit Company (Transit) against Safeway Trails, Inc. (Safeway) to obtain an injunction against certain competitive bus operations of Safeway alleged to be illegal.[1] The dismissal order recited that the complaint was premature because plaintiff had not first exhausted available administrative remedies under the Interstate Commerce Act, 49 U. S.C.A. § 1 et seq., and the laws governing the Public Utilities Commission of the District of Columbia. Remarks of the District judge explaining his decision indicate he did not intend the order to be construed as ruling the court was without jurisdiction of any aspect of the case, but as a decision that a cause of action was not stated for injunctive relief prior to resort by plaintiff to available administrative processes.

The facts essentially are as follows. Transit operates the bus line affected under orders of the District of Columbia Public Utilities Commission and under a permit of the Public Service Commission of Maryland. It transports passengers for hire on a fixed schedule on New Hampshire Avenue between points in the District of Columbia and in Maryland south of the Montgomery County-Prince George County line. Safeway also operates a bus line over the same route[2] for the transportation of pas-

---

1. A temporary restraining order was also dissolved but reinstated pending the appeal upon Transit furnishing bond.

2. There is a slight difference due to the fact that Transit's terminal in the District is at 12th and E Streets, N. W., while that of Safeway is at 12th Street and New York Avenue, N. W.

sengers for hire on a fixed schedule. When the complaint was filed Safeway held a certificate of convenience and necessity issued by the Interstate Commerce Commission. This certificate prohibited Safeway from picking up and discharging the same passengers between any point in the District of Columbia and any point in Maryland on its route south of said county line. Pending this appeal, however, the Interstate Commerce Commission removed this restriction and accordingly there is no longer any controversy within the jurisdiction of that Commission. There does remain Transit's contention that the operations of Safeway to which objection is made are competitive with Transit, are without the requisite permission of the Public Utilities Commission, and cause such injury to legally protectible rights of Transit as cannot adequately be remedied at law.

■ The District of Columbia Code 1951, § 44–201, prohibits the establishment of a bus line, competitive with Transit, over a given route on a fixed schedule unless the Commission has issued a certificate to the competing carrier that its line is necessary for the convenience of the public. This gives Transit a status which is legally protectible. Frost v. Corporation Commission, 1929, 278 U.S. 515, 49 S.Ct. 235, 73 L. Ed. 483; Adam v. New York Trust Co., 1930, 5 Cir., 37 F.2d 826, certiorari granted, 281 U.S. 715, 50 S.Ct. 460, 74 L.Ed. 1135, 1931, certiorari dismissed as improvidently granted, 282 U.S. 814, 51 S.Ct. 214, 75 L.Ed. 728; Wichita Transp. Co. v. People's

Taxicab Co., 1934, 140 Kan. 40, 34 P.2d 550, 94 A.L.R. 771; Slusher v. Safety Coach Transit Co., 1929, 229 Ky. 731, 17 S.W.2d 1012, 66 A.L.R. 1378. Safeway does operate over a given route on a fixed schedule and on the facts as they must be assumed for present purposes Safeway does not have such a certificate. Furthermore, the motion to dismiss admits the allegations of the complaint as to the picking up and discharging of passengers in competition with Transit. Safeway says, however, that the Merger Act,[3] part of which, § 44–201, D.C.Code 1951, is relied on by Transit, also provides in Section 1, 47 Stat. 759 (1933), that nothing in the Act "shall be construed to limit the present powers of the Public Utilities Commission" and that the Commission, in the exercise of powers thus reserved, by P.U.C. Order No. 2821 of August 25, 1944, authorized Safeway's challenged operations. This order, read with P.U.C. Order No. 1600 of April 19, 1937, which it amends, authorizes Safeway "to operate passenger buses in Class A service, as defined in Order No. 936", over the route therein described,[4] which includes New Hampshire Avenue within the District of Columbia. Intra-District passengers, however, are prohibited, Order No. 1600, Section 3. Whether or not these orders support Safeway's operations depends upon the nature of Class A service. By P.U.C. Order No. 936 of July 15, 1931, Class A motor buses are defined as follows:

"Class A. Buses which run on regular schedules, carrying passengers mak-

---

**3.** The Merger Act of 1933, 47 Stat. 752, provided that street-railway corporations operating in the District might merge into a single company to be called Capital Transit Company. Section 4 of the Act, 47 Stat. 760 (1933), § 44–201, D.C.Code 1951, seems to be the only part of the Act specifically included in the Code; but some sections of the Code, not here material, were changed to conform with the Merger Act.

**4.** The route described in the order is as follows:

"INBOUND: From the District of Columbia boundary line, southwest on New Hampshire Avenue to Sherman Ave-

nue, south on Sherman Avenue to Florida Avenue, southeast on Florida Avenue to Vermont Avenue, southwest on Vermont Avenue to 11th Street, south on 11th Street to New York Avenue, southwest on New York Avenue to the terminal at 1201 New York Avenue, Northwest.

"OUTBOUND: North on 12th Street to Vermont Avenue, northeast on Vermont Avenue to Florida Avenue, northwest on Florida Avenue to Sherman Avenue, north on Sherman Avenue to New Hampshire Avenue, northeast on New Hampshire Avenue to the District of Columbia boundary line."

ing occasional trips between Washington and other Metropolitan Areas."
The same order also provides:

"(2) No Class A bus, which is defined as any bus which runs on regular schedules, carrying passengers making occasional trips between Washington and other Metropolitan Areas, shall after August 15, 1931, enter, leave or operate in the District of Columbia except over such route or routes and to such stops or terminals as may hereafter be approved by proper authority."

■ In this situation was the court required to entertain the suit for an injunction against Safeway? In answering we must consider the functions of the Public Utilities Commission as they might here apply. The Code, D.C.Code 1951, grants the Commission power (1) to investigate summarily any matter relating to any public utility, § 43–414; (2) to hold a hearing after such investigation, § 43–415; (3) to entertain the complaint of any public utility (such as Transit) as to any matter affecting its service, with like effect as though made by the Commission or upon reasonable complaint as otherwise provided, § 43–417; and (4) under the provisions of § 43–303, "by order in writing, to require and compel every public utility to comply" with the applicable laws, ordinances and regulations.[5] Under § 43–705, any public utility affected by any final order or decision, with exceptions not here pertinent, may appeal to the District Court, with right of appeal therefrom to this court.

Clearly, these provisions are broad enough to cover any matter posed by the complaint. In other words, an administrative remedy is available to Transit. It is

true that the question whether Safeway without the certificate referred to is competing illegally with Transit is a legal, juridical question under the Merger Act, coupled with a simple factual issue as to competition. No administrative hearing or judgment would seem to be required to decide whether Section 1 of the Merger Act in providing that nothing therein "shall be construed to limit the present powers of the Public Utilities Commission" authorizes the Commission to permit competition by a bus line which does not have the certificate referred to in § 44–201. We assume *arguendo* that this question, with its related factual issue of competition, is within the jurisdiction of the District Court without the prior consideration of the Commission. See W. P. Brown & Sons Lumber Co. v. Louisville & N. R. Co., 1937, 299 U.S. 393, 57 S.Ct. 265, 81 L.Ed. 301; Texas & Pac. Ry. Co. v. Gulf, etc., Ry. Co., 1926, 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578, and Great Northern Ry. Co. v. Merchants' Elevator Co., 1922, 259 U.S. 285, 294, 42 S.Ct. 477, 66 L.Ed. 943. Nevertheless, the whole controversy might be disposed of without reaching this question because the orders of the Commission giving Safeway a route over which to travel might in any event be found to afford that company no authority to pick up or discharge passengers in competition with Transit on any part of the route. This is a question for consideration first by the Commission. It turns upon the character of Class A bus lines in terms of permissible and non-specified stops for the picking up and discharging of passengers along the route involved. No single naked legal question coupled with a simple factual issue is presented. The significance of orders of the Commission as they affect the

5. "The commission shall have power, after hearing and notice by order in writing, to require and compel every public utility to comply with the provisions of chapters 1–10 of this title, and with all other laws of the United States applicable, and any municipal ordinance or regulation relating to said public utility, and to conform to the duties upon it thereby imposed or by the provisions of its own charter, if any charter has or shall be granted it: *Provided*, That nothing herein contained

shall be held to relieve any public utility, its officers, agents, or servants, from any punishment, fine, forfeiture, or penalty for violation of any such law, ordinance, regulation, or duty imposed by its charter, nor to limit, take away, or restrict the jurisdiction of any court or other authority which on March 4, 1913, had or which may thereafter have power to impose any such punishment, fine, forfeiture, or penalty." § 43–303, D.C.Code 1951.

interrelationship of the two utilities is to be determined. The problems posed are administrative, of the character which Congress clearly intended the Commission to cope with initially. The Code, D.C.Code 1951, particularly in §§ 43–414, 43–415, 43–417, and 43–303, grants the Commission very broad authority to consider complaints and on such complaints or on its own initiative to undertake proceedings leading to orders designed to keep utility operations in conformity with applicable laws and regulations. Indeed, under these provisions the legal question under the Merger Act is also within the Commission's competence, subject to review by the court under § 43–705.[6]

Since a decision by the Commission of the question whether Safeway's operations are permissible under outstanding orders might be dispositive of the controversy, no obligation rested upon the District Court to decide the legal question under the Merger Act. This conclusion is underscored when we consider the great detail of powers granted by Congress to the Commission. They indicate that the complexity of utility regulation and operation is to be policed in the first instance, as far as is reasonably possible, by the Commission. The action of the District Court in dismissing the complaint accorded with this plan. Though a judicial question was presented along with the administrative, the court properly remitted the parties first to the administrative tribunal. See Order of Ry. Conductors v. Pitney, 1946, 326 U.S. 561, 567, 66 S. Ct. 322, 90 L.Ed. 318; Thompson v. Texas Mexican R. Co., 1946, 328 U.S. 134, 151, 66 S.Ct. 937, 90 L.Ed. 1132. In the cases cited the equity court's jurisdiction was retained pending administrative action; but this we think is not essential here, for administrative action might end the whole controversy. See, also, Briggs Transfer Co. v. National Butter Co., 1952, 8 Cir., 199 F.2d 847. A case requiring injunctive relief is not made by the complaint.

Affirmed.

6. The fact that the Merger Act question might be decided by the Commission does not, however, remove it from the jurisdiction also of the District Court. The Commission's jurisdiction of this legal, non-administrative, problem is not exclusive or primary.