**William B. OGDEN, Appellant**

v.

**Eugene M. ZUCKERT, Secretary of the Air Force, Appellee.**

**No. 16283.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 6, 1961.

Decided Dec. 14, 1961.

---

Mr. John L. Kilcullen, Washington, D. C., for appellant.

Mr. Arnold T. Aikens, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Charles T. Duncan, Principal Asst. U. S. Atty., were on the brief for appellee. Mr. Daniel J. McTague, Asst. U. S. Atty., also entered an appearance for appellee. Mr. Oliver Gasch, U. S. Atty., at the time the record was filed, and Mr. Carl W. Belcher, Asst. U. S. Atty., at the time the record was filed, also entered appearances for appellee.

Before FAHY, BASTIAN and BURGER, Circuit Judges.

FAHY, Circuit Judge.

Appellant, William B. Ogden, to whom we shall refer as plaintiff, is a commissioned Air Force officer with a record of sixteen years active service as a pilot, navigator and bombardier, including combat service during World War II. The appellee, defendant, is the Secretary of the Air Force.

Plaintiff reached the rank of major with an unblemished record. In 1957 he was found to be suffering from severe chronic anxiety and chronic bronchitis. His case was referred to a Medical Board of the Air Force to determine whether he was qualified to be retained in the service.[1] The diagnosis was confirmed by the Medical Board, which thereupon referred his case to a Physical Evaluation Board.[2] This Board found plaintiff unfit for retention on active duty and recommended that he be placed on the temporary disability retired list with a disability rating of 40 per cent. This recommendation was subsequently approved by the Physical Review Council.[3] In March 1958 the then Secretary of the Air Force directed that Ogden be placed on the temporary disability retired list with a compensable rating of 40 per cent. Two years later, in February 1960, he underwent a periodic examination required by statute to determine whether his physical disability was of a permanent nature.[4] He was given an extensive physical and psychiatric examination at Andrews Air Force Base Hospital. His case was then considered by a Medical Board consisting of three medical officers of the Air Force. This Board found plaintiff's condition permanent and not likely to improve. The case was then referred to a duly convened Physical Evaluation Board at Andrews Air Force Base, which confirmed the findings of the Medical Board and recommended that plaintiff be placed on the permanent disability retirement list with a compensable disability rating of 40 per cent. This finding and recommendation was reviewed by the Air Force Physical Review Council. The Council recommended that plaintiff's compensable disability be reduced from 40 per cent to 10 per cent and that he be discharged from the service. The case then came before the Air Force Physical Disability Appeal Board, which, without further medical evidence or an additional physical examination of

---

1. AFM 35–4 ¶ 42, at 20 (1960).

2. AFM 35–4 ¶ 48(a) (3), at 22 (1960).

3. AFM 35–4 ¶ 90, at 45 (1960).

4. 10 U.S.C. § 1210(a) (1958).

plaintiff's condition, affirmed the Council's recommendation. Pursuant to this finding the Secretary on May 20, 1960, directed the removal of plaintiff's name from the temporary disability retired list and that he be discharged from the service on May 31, 1960. The action in the District Court was then instituted by plaintiff.

Plaintiff seeks a declaratory judgment that he is entitled to be retained on the permanent retired list of the Air Force rather than being discharged. The District Court granted defendant's motion to dismiss the complaint, holding that plaintiff had failed to exhaust his administrative remedies. Recitals in its order indicate that the court concluded that plaintiff, before the court could take jurisdiction, was obliged to submit his problem to the Air Force Board for Correction of Military Records. This Board is established pursuant to a statute [5] which implements section 131 of the Legislative Reorganization Act of 1946. Section 131 provides that no private bill or resolution authorizing or directing the correction of military or naval records shall be received or considered in either the Senate or the House of Representatives.[6] In lieu of this method of seeking relief the statute provides:

> "The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department *when he considers it necessary* to correct an error or remove an injustice. * * * Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States." [7]

5. 10 U.S.C. § 1552(a) (1958).

6. 60 Stat. 831 (1946), 2 U.S.C. § 190g (1958), 2 U.S.C.A. § 190g.

7. 10 U.S.C. § 1552(a) (1958). [Emphasis added.]

The statute further provides that **no** correction may be made under the above provision "unless the claimant or his heir or legal representative files a request therefor before October 26, 1961, or within three years after he discovers the error or injustice, whichever is later." [8] At present the period of limitation is three years after the error or injustice is discovered.

Regulations were promulgated in due course to implement the statute, but with one exception they shed no light upon our problem. The exception reads:

> "The record of proceedings of the Board will be forwarded to the Secretary of the Air Force who will direct such action in each case *as he determines to be appropriate.* * * * " [9]

The Government takes the position, and we assume for purposes of this opinion, that the Air Force Board for Correction of Military Records, to which we shall refer hereinafter as the Board, would if requested assume jurisdiction of Major Ogden's problem, and that the Board could make a recommendation which, if approved and acted upon by the Secretary, would afford plaintiff the relief he seeks, that is, in substance, that he be placed upon the Air Force permanent retired list rather than being separated from the service.

■■ While the problem is a subtle one and the answer not entirely clear, we conclude that the court was not deprived of jurisdiction by plaintiff's omission to seek Board consideration. Several factors lead to this conclusion. The statute under which the Board was established obviously was intended by Congress to take the place of private bills for relief from error or injustice at the

8. 10 U.S.C. § 1552(b). An additional provision permits the Board to excuse a failure to file within the three-year period if it finds such action to be in the interest of justice.

9. AFR 31–3 ¶ 23, at 5 (1952). [Emphasis added.]

hands of the Armed Services.[10] There is no indication of congressional consciousness or intention that judicial jurisdiction would be affected. This may be due in part to the absence of any legislative provision for judicial review of the Secretaries' actions in such matters, but the fact remains that no intention is evidenced to preclude judicial review as previously authorized by court decisions. The congressional plan is for the Boards to assist the Secretaries in correcting errors and injustices in military records. This plan was not designed to bring the Boards into the original administrative process of making the records, a process which is participated in by the various other boards, referred to earlier in this opinion, which considered and reviewed plaintiff's case before the Secretary acted.

There are important additional factors. An application to the Board may be delayed up to three years after the discovery of the error or injustice, and the aid of the Board may be invoked by the claimant's heirs or legal representatives as well as by the claimant himself. All this obviously removes Board consideration from the administrative process which precedes finality.

The Board furnishes a means by which to seek correction of error or injustice, but neither statute nor regulation requires this means to be pursued as a condition to finality of the Secretary's action. The relief which might ensue after Board consideration, similar to relief previously obtained by private bills enacted by Congress, is through a procedure over and above that which guides the administrative process itself to its end. It is a part of a different and subsequent procedure. The place and function of the Board may be roughly compared to that of the bill of review in equity which sought relief from a final judgment where error or injustice appeared. See Rule 60(b), Fed.R.Civ.P., 28 U.S.C.

It would be a welcome matter for the courts to be able to disclaim jurisdiction until after resort to the Board; but our problem is not to satisfy judicial convenience so much as it is under existing legislation and decisions to preserve to the individual a forum to which he is entitled to present his case. And this is so even though most persons will undoubtedly resort to the Board; for the criteria for obtaining judicial relief are difficult to satisfy in such a case, involving the management by the Armed Services of their personnel problems.

The most pertinent judicial decisions interpreting the nature of these Boards have arisen in litigation before the United States Court of Claims.

In Girault v. United States, 135 F. Supp. 521, 133 Ct.Cl. 135 (1955), the question was whether the period of limitations within which one must sue in the Court of Claims began to run from the time the Secretary acted. Holding that application to the Board did not suspend the period of limitations, the court said,

> "All of these boards, the Retiring Board, the Disability Review Board, and the Board for Correction of Military Records act only in an advisory capacity to the Secretary of War. If his decision on the retirement rights of an officer is alleged to have been arbitrary, then the officer's right to come to the court for redress accrues as soon as the arbitrary decision is rendered.

> "Indeed, the statutes did not contemplate court review at all; full and complete jurisdiction to determine an officer's right to retire for disability was lodged in the Secretary of War, acting for the President. Resort to the court can only be had if the Secretary's action is arbitrary or unlawful. As soon as it appears that the Secretary is acting in such a manner, the officer can appeal to the court for redress."

135 F.Supp. at 526.

---

10. See 40 Ops. Att'y Gen. 504 (1947).

A similar case is Duff v. United States, 135 F.Supp. 527, 133 Ct.Cl. 161, (1955), where the Court of Claims said that under the Act setting up the Board the officer may or may not request a review, that in the absence of such request the action of the Secretary is final and conclusive, unless arbitrary, capricious, or plainly contrary to law, that if arbitrary the officer can come to court as soon as the arbitrary decision is rendered, and that before doing so he need not request review by the Board.

After these decisions the Court of Claims decided Proper v. United States, 154 F.Supp. 317, 139 Ct.Cl. 511 (1957), with Judge Whitaker, who had written the opinions in the two foregoing cases, dissenting, joined by Judge Laramore. The question was whether the action of the Secretary of the Army, which was contrary to a recommendation of a majority of the Board, was arbitrary. The court withdrew somewhat from its previous position that the Board had only an advisory function, saying:

"Such an interpretation of section 207 [that the Board's recommendation is advisory only] makes the words 'acting through boards of civilian officers or employees' superfluous. Neither the act itself nor its legislative history warrants such an interpretation. Since the errors or injustices which might require correction were originally made by the military, Congress made it manifest that the correction of those errors and injustices was to be in the hands of civilians. * * *

"On the other hand, we do not suggest that the Secretary may not overrule the recommendations of the Correction Board where the findings of that Board are not justified by the record on which the findings were made. * * * *"

154 F.Supp. at 326. The actual decision was that the Secretary's failure to follow the recommendation of the majority of the Board was arbitrary. The officer had gone to the Board and came to court after the Secretary had failed to follow the recommendation of the Board. The court does not hold, however, that the officer was required to go to the Board, but rather that the Board having made its recommendation the Secretary was required to follow it unless the Board's findings were not justified by the record on which they were made. While this gives to the Board more than an advisory function, it does not appear that the Court of Claims intended to overrule its prior decisions to the effect that resort to the Board was not essential to the assumption of jurisdiction by the court.

The Secretary relies on our cases of Bolger v. Marshall, 90 U.S.App.D.C. 30, 193 F.2d 37, and Young v. Higley, 95 U.S.App.D.C. 122, 220 F.2d 487, and on the Second Circuit case of Michaelson v. Herren, 242 F.2d 693 (2d Cir.1957). None of these seems to be quite in point. The administrative remedy available in each was prior to the administrative action becoming final, which is not our situation. On the other hand, plaintiff's reliance on Levers v. Anderson, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26, is not very helpful either. That case holds that the right to petition an administrative board for reconsideration of its own decision does not require the exhaustion of such a permissive remedy before resort is had to the courts.

We have, then, a situation where (1) neither statute nor regulation requires by its terminology resort to the Board; (2) resort thereto is available for as long as three years and may be at the instance not only of the claimant but of his heirs or legal representatives; (3) the Secretary's action without Board consideration is final though subject to his revision through the Board procedures; (4) the purpose of the Board is to relieve Congress from passing private bills. On the other hand, the Board (1) is available, (2) it serves a salutary and most useful purpose in this area of military personnel records, and (3) while its recommendations are not decisive, since the statute leaves the correction to the Secretary "when he considers it neces-

sary," [11] ordinarily the Secretary will adopt the Board position, consistently with the congressional purpose.

With the above situation in mind, we turn for our ultimate solution to middle ground, cleared for judicial standing room by the opinion of Mr. Justice Brandeis in United States v. Abilene & Southern Ry., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016. There the right to appeal from an order of a Division of the Interstate Commerce Commission to the Commission itself was permissible. This gave rise to the contention that resort to the court without initially seeking such an appeal was barred under the exhaustion doctrine. The Supreme Court held that notwithstanding the failure of the carriers to obtain review before the entire Commission the district court had jurisdiction to entertain the case. The Court also held that there was discretion in the district court not to exercise its jurisdiction pending further administrative consideration and that this discretion had not been abused by denial of the Commission's motion to dismiss. Mr. Justice Brandeis' opinion states:

"Whether it [the district court] should have denied relief until all possible administrative remedies had been exhausted was a matter which called for the exercise of its judicial discretion. We cannot say that, in denying the motion to dismiss, the discretion was abused." 265 U.S. at 282, 44 S.Ct. at 567.

And in Levers v. Anderson, supra 326 U.S. at 224, 66 S.Ct. at 72, there is the suggestion that notwithstanding jurisdiction in the court it might exercise a discretion to stay its review pending further administrative consideration. Similarly, see Cuiffo v. United States, 137 F.Supp. 944 (Ct.Cl.1955). There the court contrasts the problem of judicial jurisdiction when an administrative remedy is available, though not required, with the situation where a statute requires exhaustion of the administrative remedy. After quoting from the Abilene case, supra, the court continues:

"Where the right to pursue an administrative remedy is given, but not required, it is at least within the discretion of the courts to entertain a suit before the administrative procedure has been exhausted."

137 F.Supp. at 947. And see Order of Ry. Conductors etc. v. Pitney, 326 U.S. 561, 567–568, 66 S.Ct. 322, 90 L.Ed. 318, and cases there referred to; Smithmeyer v. United States, 147 U.S. 342, 358, 13 S. Ct. 321, 37 L.Ed. 196; Atchison, T. & S. F. Ry. v. Aircoach Transp. Ass'n, 102 U. S.App.D.C. 355, 363–364, 253 F.2d 877, 885–886, cert. denied, 361 U.S. 930, 80 S.Ct. 372, 4 L.Ed.2d 354; Capital Transit Co. v. Safeway Trails, Inc., 92 U.S.App. D.C. 20, 201 F.2d 708; Hardy v. Rossell, 135 F.Supp. 260, 267–268 (S.D.N.Y. 1955).

We conclude that jurisdiction of the court was not precluded by the omission of plaintiff to seek relief through the Board; but we also conclude that on the remand the court may, in its discretion, refrain from exercising jurisdiction to decide the case pending plaintiff's pursuit of relief at the hands of the Secretary acting through the Board, the court in the meantime retaining jurisdiction. We have not considered any other problem, either jurisdictional or with respect to the merits.

Reversed and remanded.

BURGER, Circuit Judge (dissenting).

I think the District Court correctly held that appellant had failed to exhaust administrative remedies available to him. Congress has authorized creation of a special body, made up of civilians, "to correct an error or remove an injustice." [1] The majority opinion concedes, and I think correctly, that the Board for Correction of Military Records "would, if requested assume jurisdiction of Major

---

11. See 10 U.S.C. § 1552(a), supra note 7, and also, the regulation referred to in note 9 supra.

1. 60 Stat. 837 (1946), as amended, 10 U.S.C. 1552(a) (1958).

Ogden's problem, and * * * could make a recommendation which, if approved and acted upon by the Secretary, would afford plaintiff the relief he seeks * * *." I have difficulty in seeing why that is not dispositive of the case. Congress need not explicitly forbid resort to the courts absent exhaustion of administrative remedies. The familiar doctrine, not challenged by the majority, is that if an administrative remedy is available it must be employed before the courts may be called upon to exercise judicial power. E. g., Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954); National Council of American-Soviet Friendship v. Brownell, 100 U.S.App.D.C. 116, 243 F.2d 222 (1957).

It is not suggested by the majority that the unexhausted remedy here would be merely an ineffective formality. The majority recognizes the effect of Proper v. United States, 154 F.Supp. 317, 139 Ct. Cl. 511 (1957), to be that the Secretary of one of the military branches may not overrule the recommendations of the Board for Correction where the findings of that Board are justified by the record on which the findings are made. A "final" order of a Secretary may thus be reversed by an independent Board such as the one involved here, which he cannot arbitrarily disregard. This administrative compulsion, under which a secretarial order may fall, distinguishes this case from United States v. Abilene & Southern Ry., 265 U.S. 274, 44 S.Ct. 565 (1924), upon which the majority relies, since there, despite Justice Brandeis' characterization of a rehearing before the full Interstate Commerce Commission as resembling an "appeal to another administrative tribunal," that unexhausted remedy would merely have been to request the same adjudicating body, free of independent check, to reverse itself. That situation would be analogous here only if Major Ogden were being challenged for not having applied to the Secretary of the Air Force individually for re-consideration of his discharge order.

I would not deny the Major resort to judicial remedies. I suggest only that he should not call upon the judicial branch until he has exercised or exhausted all the administrative machinery provided by Congress for solution of these essentially internal problems of the executive branch. When he has done this, then of course judicial review is available. To me the Congress has plainly intended that the courts are not to be burdened with armed forces personnel matters except as a last resort. We should not try to be their housekeepers.