Jeffrey D. NASON, Petitioner,

v.

SECRETARY OF the ARMY et al., Respondents.

Misc. Civ. No. 69–32–C.

United States District Court
D. Massachusetts.

Sept. 23, 1969.

William P. Homans, Jr., Boston, Mass., for plaintiff.

Herbert F. Travers, Jr., U.S. Atty., Stanislaw R. J. Suchecki, Asst. U.S. Atty., for defendant.

OPINION AND ORDER

CAFFREY, District Judge.

■ This matter came before the Court on petitioner's application for a writ of habeas corpus, respondents' opposition to the granting of the writ, and respondents' motion to dismiss the application. A hearing was held, at which testimony of Rabbi Roland B. Gittelsohn was offered by petitioner for the purpose of showing compatibility between the principles of Jewish theology and the principles of conscientious objection, and for showing that there is a basis in Jewish theology for conscientious objection. This testimony was treated only as an offer of proof at the hearing and I so treat it herein, in view of the well-established principle that the review of the administrative proceeding before the United States Army is to be conducted by a district court solely on the evidence which was before the Army. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947). The matter was also briefed by the parties. The following facts may be taken as true for the purpose of deciding these motions.

Petitioner, a physician and psychiatrist, is a First Lieutenant, Medical Corps, in the United States Army Reserve. He is not on active duty nor is he attached to any particular reserve unit. He is presently engaged in a period of residency training and is deferred from being called to active duty in the United States Army until such time as his residency training shall be determined by the Army to have been completed. His enlistment in the reserve is pursuant to the Armed Forces Physicians Appointment and Residency Consideration Program, commonly known as the "Berry Plan."

Dr. Nason filed an application for appointment as a First Lieutenant in the Army Reserve on August 23, 1966. He was appointed a First Lieutenant in the reserve, under the provisions of 10 U.S.C.A. §§ 591, 593, on November 10, 1966, and executed his oath of office on November 23, 1966.

On October 22, 1968, petitioner filed an application for discharge, by reason of conscientious objection, with the Office of Personnel Operations, United States Army, pursuant to Army Regulation 135–25. The application was supported by documentation, which included a statement by petitioner as to his conscientious opposition to participating in the war in any form by reason of his religious training and belief, and letters from various individuals. After certain administrative steps and processes were followed, a letter was written on March 27, 1969, by Lt. Colonel William E. Manning, Acting Commanding Officer, Department of Personnel Operations, United States Army, which letter advised Dr. Nason of the denial of his application, for the reason that "the documenta-

tion and evidence presented * * * indicates your beliefs constitute a personal moral code founded on sociological and philosophical views and an objection to the current conflict in the Republic of Viet Nam. In addition, the documentation submitted failed to convince the individual board members of the sincerity of your stated conscientious objector conviction."

The motion to dismiss filed by the Government is based on three grounds, (1) that this court lacks jurisdiction, (2) failure of petitioner to exhaust administrative remedies within the Army, and (3) that there was a basis in fact justifying the Army's denial of petitioner's application for discharge.

■ It has long been established that the jurisdiction of a United States district court to issue a writ of habeas corpus is limited to those cases in which the petitioner is confined or detained within the territorial jurisdiction of the court, Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); Duncan v. State of Maine, 295 F.2d 528, 530 (1 Cir. 1961), cert. denied 368 U.S. 998, 82 S.Ct. 624, 7 L.Ed.2d 536. It is likewise beyond argument that a person on active duty in the armed services is "in custody" within the meaning of 28 U.S.C.A. sec. 2241. Brown v. McNamara, 387 F.2d 150, 152 (3 Cir. 1967), cert. denied sub nom. Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968). Further, it has been held that a member of a reserve component of the military service may likewise qualify as a petitioner "in custody" under 28 U.S.C.A. sec. 2241. United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 373 (2 Cir. 1968), cert. denied 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); Hammond v. Lenfest, 398 F.2d 705, 710 (2 Cir. 1968); Barr v. Weise, 293 F.Supp. 7 (S.D.N.Y.1968).

■ I rule that under the provisions of AR 135–50 a doctor pursuing his medical education under the so-called Berry Plan, even though the more military aspects of his service, training and

other incidents of reserve status are more remote than those of non-medical members of various reserve units and components, is, nevertheless a reserve officer, and as such has standing to bring a petition for a writ of habeas corpus. Such a medical reservist, as appears from Government Exhibit 2 herein, has received a reserve commission by direction of the President, has received an appointment as a reserve officer for an indefinite term, and has executed an oath of office (DA Form 71) in which he acknowledges, *inter alia*, "I * * * having been appointed an officer in the Army of the United States * * * will well and faithfully discharge the duties of the office * * *"

■ I further rule that because petitioner is serving a medical residency in Massachusetts, at the Massachusetts Mental Health Center, Boston, with the approval of the United States Army Reserve Components Personnel Center, Fort Benjamin Harrison, Indianapolis, Indiana, as appears from Exhibit 2, he is following the program subject to and in conformity with the provisions of paragraph 14 of AR 135–50 dated May 9, 1966. Consequently, to the extent that any member of a reserve component is "in custody" anywhere for purposes of habeas corpus, I rule that Dr. Nason is "in custody" in Massachusetts, where he is following a program of residency training in psychiatry with the express approval of the Commanding Officer, United States Army Reserve Components Personnel Center, Fort Benjamin Harrison, and that, therefore, he is "in custody" within the meaning of 28 U.S. C.A. § 2241 in Massachusetts, and this court does have jurisdiction.

With regard to the question of whether or not petitioner has exhausted available administrative remedies, the law is far from clear. Not only have contrary results recently been reached by the Court of Appeals for the Ninth Circuit, Craycroft v. Ferrall, 408 F.2d 587 (1969), and the Court of Appeals for the Fourth Circuit, U.S. ex rel. Brooks v. Clifford, 409 F.2d 700 (1969), rehearing denied,

4 Cir., 412 F.2d 1137, United States ex rel. Tobias v. Laird, 4 Cir., 413 F.2d 936, July 25, 1969, but it would also appear that in two recent opinions, Laxer v. Cushman, June 19, 1969, No. 69–28 D.C., 300 F.Supp. 920, and Jenkins v. Commandant, First Naval District, Sept. 16, 1969, No. 69–39, D.C., 303 F.Supp. 1150 other judges of this court have likewise taken contrary positions on the legal issue as to whether or not a member of the military must take an appeal to the Army Board for Correction of Military Records under the doctrine of exhaustion of administrative remedies. The position taken by the Court of Appeals for the Fourth Circuit has also been adopted by the Court of Appeals for the District of Columbia, in Ogden v. Zuckert, 111 U.S. App.D.C. 398, 298 F.2d 312 (1961) and by the District Court for the Northern District of California in Gann v. Wilson, 289 F.Supp. 191 (1968).

█ With all deference to those courts which have ruled that the Army Board of Correction of Military Records must first be resorted to, I am persuaded, primarily on an analysis of the legislative history of the statute which created that Board, that the doctrine of exhaustion of administrative remedies does not require application to that Board prior to the institution of a petition for habeas corpus.

In Ogden v. Zuckert, *supra*, the Court of Appeals for the District of Columbia characterized the legislative purpose of Section 1552(a) as follows:

"The statute under which the Board was established obviously was intended by Congress to take the place of private bills for relief from error or injustice at the hands of the Armed Services. There is no indication of congressional consciousness or intention that judicial jurisdiction would be affected. * * * The congressional plan is for the Boards to assist the Secretaries in correcting errors and injustices in military records. This plan was not designed to bring the Boards into the original administrative process of making the records * * *.

An application to the Board may be delayed up to three years after the discovery of the error or injustice, and the aid of the Board may be invoked by the claimant's heirs or legal representatives * * *. All this obviously removes Board consideration from the administrative process which precedes finality." 298 F.2d (pp. 314–315)

A similar view of the legislative purpose of this statute was expressed by the Court of Appeals for the Third Circuit in Nelson v. Miller, 373 F.2d 474 (1967), cert. denied 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980. The Court stated (at p. 479):

"* * * the statute authorizing the creation of Boards of Correction was intended to supplant private bills in Congress for the correction of military records, and *was not intended to affect judicial jurisdiction. * * ** its function may, in particular cases, be that of a pardons board rather than an instrument for the interpretation and refinement of military regulations and procedures." (Emphasis added.)

Section 121 of the report of the Senate Committee is less articulate than the above-quoted opinions but it does contain a brief observation (at p. 18):

"This section bans private bills, resolutions, and amendments authorizing or directing * * * the correction of military or naval records."

Also persuasive of this viewpoint is the opinion of Attorney General Tom Clark (later Mr. Justice Clark of the Supreme Court), 40 Op.A.G. 504 (1947). Attorney General Clark observed (at pp. 508–509):

"* * * the language of 207 cannot be construed as permitting the reopening of the proceedings, findings and judgments of courts martial so as to disturb the conclusiveness of such judgments. * * * The correction of the record and the issuance of a new discharge may be regarded as acts of clemency, or in mitigation, precisely comparable in effect to a

successful appeal to the Congress for relief by private act. * * * Furthermore, section 207 is not to be regarded as superimposing a further means of review, freely available, upon the procedures previously set up."

That board is not empowered to redetermine on the merits the question whether or not petitioner is a conscientious objector. Thus, while resort to the board is a remedy which was open to petitioner to pursue if he elected to do so, it was not an "adequate" remedy and, therefore, the doctrine of exhaustion of administrative remedies does not apply to this board. Smith v. United States, 199 F.2d 377, 381 (1 Cir. 1952); Jaffe, Judicial Control of Administrative Action, pp. 424–458; Habeas Corpus and the In-Service Conscientious Objector, 1969 Utah L. Rev., pp. 334–339.

On the basis of the foregoing I rule that it was not necessary for petitioner to seek relief from the Army Board of Correction of Military Records as a condition precedent to the existence of jurisdiction of this court to hear and determine his petition for habeas corpus.

Lastly, respondents urge that there was a basis in fact to deny petitioner's application for discharge. On the basis of Government Exhibit 2, purporting to be the complete record of the administrative proceedings complained of herein, it appears that subsequent to filing his application for discharge as a conscientious objector, Dr. Nason was interviewed by three officers of the United States Army. The first officer was a psychiatrist, Capt. Lawrence Bryskin, whose report appears at page 41 of Exhibit C to Government Exhibit 2. This one-page report merely amounts to a psychiatric evaluation of Dr. Nason, with the conclusion that no psychiatric disease was found, that Dr. Nason was and is mentally responsive, has the mental capacity to understand and participate in administrative proceedings, and, finally, that his examination of Dr. Nason disclosed no evidence of any psychosis.

Dr. Nason was interviewed also by an Army chaplain, Major Donald E. Bloor, whose report appears at pages 42 and 43 of Exhibit D to Government Exhibit 2, and by Capt. Richard P. Ashenfelter, Assistant Staff Judge Advocate, whose report appears at pages 44 and 45 of Exhibit E to Government Exhibit 2. Both Major Bloor and Captain Ashenfelter, the only two representatives of the Army who interviewed Dr. Nason, and who commented directly on the question of the sincerity of his claimed conscientious objector beliefs, found him to be conscientious, found his beliefs to have a religious basis, and recommended that he be discharged as a conscientious objector under the provisions of AR 135–25.

Also contained in Government Exhibit 2, on pages 46–47 et seq. of Exhibit F thereto, is a reference of this case to General Lewis B. Hershey for his opinion and his response thereto. A similar referral to General Hershey by the United States Coast Guard in a case involving a claimed right to a discharge as a conscientious objector by a member of the Coast Guard was disposed of adversely to the military by the Court of Appeals for this Circuit in an opinion filed July 24, 1969, in the case of Bates v. Commander, First Coast Guard District, et al., 1 Cir., 413 F.2d 475. In that case the Court observed (at p. 478):

"In accordance with standard operating procedure, the Coast Guard asked the Director of Selective Service for his opinion as to what petitioner's status would be if he were being considered for classification. The Director replied that the petitioner would not qualify as a conscientious objector but there is nothing in the record to indicate the basis for his opinion. Therefore it would be paradoxical for the Coast Guard to rely on this to bolster its case."

█ This court is bound by that ruling of the Court of Appeals and consequently the opinion of General Hershey cannot be utilized by the Army in this case for the purpose of supplying a basis in fact for the decision of its Conscientious Objector Review Board.

On the entire administrative record, where the only evidence or facts before the three-member board were the reports of Major Bloor and Captain Ashenfelter, I rule that the findings of the conscientious objector review board have no basis in fact and that consequently the denial of Dr. Nason's application for discharge as a conscientious objector is illegal. It is, therefore,

Ordered: that the petition for writ of habeas corpus be and it hereby is allowed. The respondents are directed to issue the appropriate orders discharging Dr. Nason from the medical reserve of the Army of the United States.