Captain Frederick J. MacKAY,
Plaintiff,

v.

Honorable Martin W. HOFFMAN,
Secretary of the Army,
Defendant.

Civ. No. 75-1565.

United States District Court,
District of Columbia.

Nov. 4, 1975.

468

Donald H. Dalton, Washington, D. C., for plaintiff.

Rex E. Lee, Asst. Atty. Gen., U. S. Dept. of Justice, Earl J. Silbert, U. S. Atty., George Stohner, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

### I. BACKGROUND

Plaintiff, a Reserve Captain in the United States Army, entered the armed services as a Private on July 2, 1959, and was commissioned as a Second Lieutenant in September, 1964. Subsequently, MacKay received promotions to First Lieutenant in March of 1966 and to Captain the following year.

In January, 1974, the Secretary of the Army convened a Promotion Selection Board to consider officers, one of whom was plaintiff, for promotion to the rank of temporary Major. Two "zones of consideration"[1] were established—a primary zone, which included Captain MacKay, and a secondary zone, consisting of captains with a somewhat later date of rank than those in the primary zone. Selections were to be made from both zones of consideration, but only those officers deemed best qualified, regardless of zone, could be recommended for promotion. *See* A.R. 624–100,

---

1. Under Army Regulations, recommendations for promotion are made by a Promotion Selection Board from "zones of consideration" composed of officers who attained a certain rank after a specified date. *See* A. R. 624–100 ¶ 14, 16.

¶ 18a(1). It was contemplated that 85% of the Board's recommendations would come from the primary zone and 15% from the secondary zone, subject, of course, to the "best qualified" standard.

At the conclusion of its evaluations, the Board recommended to the Secretary of the Army a list of officers of which 92.5% was drawn from the primary zone and 7.5% from the secondary zone. Concluding that a misunderstanding had occurred, the Secretary dissolved that Board and convened a second one on March 30, 1974. As a precaution, the Secretary redrafted his Letter of Instruction[2] to this second Promotion Selection Board to dispel any ambiguity that may have existed in the former version as to the intended 85%–15% promotion ratio. In addition, the Secretary articulated in his Letter of Instruction the following statement of purpose with reference to secondary zone promotions:

> The secondary purpose of accelerating below the zone promotions is to provide the Army with a pool of exceptionally talented and relatively young officers in the field grades. In this regard, youth, is, in itself a major asset and primary consideration for promotion from the secondary zone. The clear intent is that the Board select the maximum number of officers from the secondary zone permitted in this letter of instruction.

Pursuant to the Secretary's new directives, the second Promotion Selection Board's list of recommendations resulted in an approximately 85–15 ratio in the primary and secondary zones, respectively. While it is impossible to ascertain whether Captain MacKay had been recommended by the first Board,[3] it is evident that plaintiff, who was in the primary zone of consideration, was not recommended by the second.[4]

In July of 1975, another Promotion Selection Board was convened; Captain MacKay was again within the primary zone. For a second time, however, the plaintiff was not recommended for promotion.

On or about August 15, 1975, the plaintiff was notified that in view of his nonselections for promotion he was subject to mandatory relief from active duty pursuant to Army Regulation 635–100, ¶ 3–65a(1). Although MacKay remains on active duty at present, he has been notified that he will be relieved from active duty not later than early November, 1975.[5]

On August 18, 1975, plaintiff filed an application with the Army Board for Correction of Military Records ("ABCMR") for correction of his Officer Efficiency Report. Again, on August 20, 1975, Captain MacKay applied to the ABCMR requesting correction of his military records based on the two promotion passovers.

Plaintiff filed this action on September 25, 1975. He challenges the legality of the Army's promotion selection process, and seeks a declaratory judgment that his order for release from active

2. Letter of Instruction for Army Selection Board Considering Officers of the Army, WAC and Chaplain Lists for Promotion to Major, AUS, March 30, 1974, D.A. Circular No. 624–61, June 15, 1974. (Plaintiff's Complaint, Attachment E).

3. This list was not made public, and has since been destroyed by the Department of Defense in the regular course of business.

4. Plaintiff was informed by a letter from Col. Robert S. Bell, USA, Deputy for Personnel Services, Department of Defense, May 1, 1974, that he had been "among those officers considered but not selected" by the second Board and that such non-selection constituted a passover for promotion as defined in A.R. 624–100. (Plaintiff's Complaint, Attachment G).

5. See letter from Commander, U.S. Army Military Personnel Center, August 29, 1975. (Plaintiff's Complaint, Attachment I).

duty is void and unlawful,[6] and that he should be continued on active duty. Additionally, plaintiff seeks broad relief against defendant by way of preliminary injunction against defendant, the Secretary of the Army.

The Secretary has filed a motion to dismiss or, in the alternative, to stay all proceedings until such time as the plaintiff has exhausted his administrative remedies before the ABCMR.

## II. THE MOTION FOR PRELIMINARY INJUNCTION

■ It is well-established, as a general rule, that in order to obtain preliminary injunctive relief the moving party must satisfy four prerequisites, *viz.*: (a) a strong showing of probability of success on the merits; (b) irreparable injury in the absence of preliminary relief; (c) absence of substantial harm to others if relief is granted; and (d) compatibility of the relief requested with the public interest. *Virginia Petroleum Jobbers Ass'n v. FPC*, 104 U.S. App.D.C. 106, 259 F.2d 921 (1958), *Murray v. Kunzig*, 149 U.S.App.D.C. 256, 462 F.2d 871 (1972), *rev'd on other grounds, sub nom., Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

■ The plaintiff herein seeks an order in equity compelling the United States to keep him in its employ during the pendency of this action. In such an extraordinary situation the plaintiff's burden is much heavier than that carried by a plaintiff in the usual case.

In *Sampson, supra,* the Supreme Court determined that the Court of Appeals erred in "routinely applying to this case the traditional standards of more orthodox 'stays,'" under the rule of *Virginia Petroleum Jobbers Ass'n, supra,* to a case in which an employee of the Federal Government sought to enjoin her dismissal pending administrative appeal. The Court cautioned:

Although we do not hold that Congress has wholly foreclosed the granting of preliminary injunctive relief in such cases, we do believe that respondent at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors[7] cutting against the general availability of preliminary injunctions in Government personnel cases. 415 U.S. at 84, 94 S.Ct. at 950.

Consequently, the plaintiff in the present case must show "at the very least" irreparable injury of the most substantial nature to warrant preliminary relief.

Captain MacKay asserts that such an irreparable injury will result from being relieved of active duty. However, in *Sampson,* the Court opined that such harm, while cognizable, does not rise to the requisite level of extreme irreparable injury, in itself. As the Court observed:

Assuming for the purpose of discussion that respondent had made a satisfactory showing of loss of income and had supported the claim that her reputation would be damaged as a result

---

6. The gravaman of plaintiff's complaint is that the Secretary's Letter of Instruction to the second Promotion Selection Board, n. 3 *supra*, (1) caused the Board to consider youth as a primary asset in the primary zone as well as the secondary zone to the extent that the number of officers promoted in each age group bore direct relation to the age of the officer being considered thereby displacing an unknown number of officers from the list recommended by the first Board, and (2) resulted in an increase in the percentage of secondary zone promotions to Major, in violation of 10 U.S.C. § 3442 and A.R. 624–100. (Plaintiff's Complaint, pp. 5–13).

7. The factors referred to in *Sampson* as inherently present in Government employment cases are (1) "the obviously disruptive effect" preliminary injunctions might have on the administrative process; (2) the "historical denial of all equitable relief" in similar actions [citing *While v. Berry*, 171 U.S. 366, 18 S.Ct. 917, 43 L.Ed. 199 (1898)]; (3) the broad latitude traditionally accorded the Government in management of its internal affairs; and (4) the unwillingness of equity to enforce personal service contracts. 415 U.S. at 83, 94 S.Ct. at 949.

of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case. 415 U.S. at 91–92, 94 S.Ct. at 953.

■ Here, Captain MacKay may indeed be relieved from active duty prior to resolution of his administrative appeal.[8] On the other hand, any loss of income which the plaintiff may suffer in the interim will be tempered by the severance pay to which he is entitled.[9] And should the plaintiff ultimately prevail on the merits, he could claim back pay, which claim would constitute a setoff against severance pay.

Therefore, plaintiff has failed to demonstrate irreparable injury sufficient to entitle him to preliminary equitable relief.

## III. DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY ALL PROCEEDINGS

■ In its Memorandum in Support of Motion to Dismiss, defendant asserts that plaintiff's failure to exhaust administrative remedies is a jurisdictional defect depriving this Court of jurisdiction over the subject matter of the instant action. However, defendant's argument misconstrues the legal import of the exhaustion doctrine for, as we noted in *Turner v. Callaway*, 371 F.Supp. 188, 192 (D.D.C.1974):

> Exhaustion of administrative remedies relates not to the court's ultimate jurisdiction but to the timing of the court's consideration of the issues. It is a concept similar to that of ripeness which delays, but does not necessarily foreclose, judicial disposition of the

issues until after the agency involved has had a full opportunity to dispose of the matter administratively. (Citations omitted).[10]

Furthermore, dismissal of the complaint is manifestly inappropriate under the case law of this Circuit. *See Hayes v. Secretary of Defense*, U.S.App.D.C., 515 F.2d 668 (1975); *Sohm v. Fowler*, 124 U.S.App.D.C. 382, 365 F.2d 915 (1966); *Ogden v. Zuckert*, 111 U.S. App.D.C. 398, 298 F.2d 312 (1961).

Alternatively, defendant moves that we stay all proceedings in this Court pending exhaustion of administrative remedies available to the plaintiff.

The decision of this Court of Appeals in *Odgen v. Zuckert, supra,* stressed that where an administrative remedy is afforded, but not required,[11] it is within the court's discretion to entertain an action prior to total exhaustion of administrative remedies. However, the discretion of the courts in this regard was sharply curtailed in *Sohm v. Fowler, supra.* There, the appellant had previously filed a petition with the Board for Correction of Military Records, which petition was still pending when the civil action was initiated. The District Court, relying on *Ogden*, held that the appellant need not exhaust his pending remedy before the ABCMR prior to seeking redress in a Federal court. The Court of Appeals disagreed, characterizing the lower court's exercise of discretion as "too broad" (124 U.S.App.D.C. at 384, 365 F.2d 917). In reversing the District Court, the Court of Appeals observed:

> Holding this suit in abeyance until the Board completes its action would comply with the basic policy of the law that administrative remedies should be exhausted so long as the agency

8. *See* discussion, *supra.*

9. *See* 10 U.S.C. § 687 and the pay scale established by Executive Order 11812, 39 F.R. 36307 (October 8, 1974).

10. See also 3 Davis, Administrative Law Treatise § 20.01 *et seq.* (1958).

11. As is so in the case of the Army Board for Correction of Military Records, *see Ogden v. Zuckert*, 111 U.S.App.D.C. at 401, 298 F.2d at 315; *Turner v. Callaway*, 371 F. Supp. at 191.

clearly has jurisdiction over the case and so long as resort to the agency is not absolutely futile. This policy, although subject to the exercise of discretion, has been applied by numerous courts in the context of Boards for Correction of Military Records, and it has evolved to the point where it can be formulated as a rule that the administrative remedy should be exhausted unless the party invoking the court's jurisdiction can demonstrate special circumstances. 124 U.S.App. D.C. at 384–385, 365 F.2d at 917–918 (Footnotes omitted).

Finally, in *Hayes v. Secretary of Defense, supra*, the Court of Appeals recognized that some of the sweeping language of *Sohm* was in apparent conflict with the rule of discretion set forth in *Ogden*. The Court of Appeals suggested, however, that the appearance of inconsistency created by those decisions could be simply resolved by interpretating *Sohm* as limited to a clear and "unexceptional" holding that "once invoked, an administrative remedy should be carried to its conclusion unless such process appears to be futile" (515 F.2d at 674).

 As already noted, *supra*, plaintiff is awaiting action on his applications of August 18 and 20, 1975, which are now pending before the ABCMR. Captain MacKay has made no showing that resort to that administrative machinery which he has set in motion would be futile. Accordingly, this Court can find no special circumstances in the instant case which would warrant deviation from the general rule requiring plaintiff to exhaust administrative remedies which were voluntarily invoked.

## IV. CONCLUSION

Plaintiff's motion for preliminary injunction and defendant's motion to dismiss are hereby denied. Defendant's motion to stay all proceedings is hereby granted with further proceedings in this action to be held in abeyance pending final exhaustion of administrative remedies.

So ordered.